# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| WILLIAM CREIG DOLVEN, ) | Case No. 15-00634-TLM |
| KAREN LOUISE DOLVEN, ) | |
| ) | |
| Debtors. ) | Chapter 7 |
| _____ ) | |

## MEMORANDUM OF DECISION

In May 2015, William and Karen Dolven ("Debtors") filed a joint petition commencing this chapter 7 case, and Noah G. Hillen ("Trustee") was appointed as the chapter 7 trustee.[1]

Trustee filed a "Motion to Approve Compromise under Fed. R. Bankr. P. 9019," Doc. No. 104 ("Compromise Motion"), and a "Motion (1) to Determine Applicability of Section 522(g); and (2) Authorize Distribution to Secured Creditor," Doc. No. 106 ("Distribution Motion"). The motions were heard on February 8, 2016, and taken under advisement after oral argument.

Neither Debtors nor Trustee presented evidence at that hearing. The

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11, U.S. Code §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

following facts are taken from documents of record[2] and from representations by counsel where no dispute was raised or otherwise appears to exist.

**FACTS**

Among the assets of the estate are several parcels of real property located in Payette County, Idaho. Only two of them are presently at issue. As described on Debtors' schedule A, they are: (1) a "primary residence" on 29.54 acres with an address of 6507 Gulch Road, New Plymouth; and (2) "10 acres with barn, bare ground with arena" having no physical address.[3] Doc. No. 1 at 10. As do the parties, the Court will call the first, 30-acre parcel containing the residence, "Parcel 1" and the second, 10-acre parcel, "Parcel 2."

Debtors valued their interest in Parcel 1 at $537,306.00 and showed $25,856.39 of secured debt against it. They valued their interest in Parcel 2 at $95,000.00 and asserted a $494,466.36 secured debt against it. *Id.* Debtors also asserted an Idaho homestead exemption of $100,000 in Parcel 1. *Id.* at 18.[4]

First American Title Insurance Company filed a proof of claim asserting a

---

[2] *See* Fed. R. Evid. 201 (judicial notice); *see also In re Vee Vinhnee*, 336 B.R. 437, 449 (9th Cir. BAP 2005) (addressing the applicability of Fed. R. Evid. 801(d) to sworn schedules).

[3] It is undisputed that the 10 acres is adjacent to the first parcel.

[4] Idaho has opted out of the Code's exemption scheme, *see* Idaho Code § 11-609, and debtors may claim only exemptions allowed by Idaho law and by § 522(b)(3). *In re Antonie*, 432 B.R. 843, 850–51 (Bankr. D. Idaho 2010). The homestead exemption is claimed under Idaho Code § 55-1001 *et seq.*

MEMORANDUM OF DECISION - 2

secured interest and claim in Parcel 1.  Claim No. 9-1.[5]  By amendment, First American asserted the amount of its claim as of the petition date was $41,452.67.  Claim No. 9-2.  U.S. Bank, N.A. ("USB") filed a proof of claim asserting a $458,362.16 secured claim based on a deed of trust.  Claim No. 10-1.[6]

On December 15, 2015, Trustee filed a motion to sell both Parcel 1 and Parcel 2.  Doc. No. 86.  The motion noted that Parcel 1 consisted of 30 acres and a house, and that Parcel 2 was 10 acres with a barn and a horse corral/arena.  In addition, the motion indicates that a driveway runs from a public road through Parcel 2 to Parcel 1, and it is impossible to access Parcel 1 without using that driveway.  Trustee's proposed sale was by auction with a disclosed opening bid of $523,000.  The motion for approval of sale further asserted First American and USB, as lien holders, "consented" to the sale.  This motion also disclosed that:

---

[5] The documents attached to this claim include a February 23, 2011 note from Debtors to Zions First National Bank in the principal amount of $36,467.90 that was to mature in 2016, and which was secured by a mortgage dated January 9, 2004; an allonge of January 29, 2015, assigning the note to First American; and the referenced mortgage securing the note, Instrument No. 315504, in the records of Payette County.  The mortgage describes the encumbered property by metes and bounds description, and references its address as "Parcel I: 1/4 mile from crossroads of Gulch Road and Bluff Road; Parcel II: 6900 Hwy 52, New Plymouth, ID 83655."  The mortgage also asserts tax identification numbers 7783, 7004, 619, and 21497.

[6] This claim is based on documents attached to the proof of claim including a December 21, 2005 note in the principal amount of $399,000.00, with a 30 year maturity, executed by Karen Dolven to the benefit of MortgageIT, Inc., and that note contains an endorsement in blank; prepayment addenda; and a deed of trust recorded December 27, 2005 as Instrument No. 331836, identifying the property as 6507 Gulch Road with a "parcel ID number" of 7783 and further described with an attached "Exhibit A" containing a metes and bounds description.  The proof of claim also refers to state court litigation "for a more complete description of Creditor's position as to the collateral covered."

MEMORANDUM OF DECISION - 3

> While USB has no perfected lien encumbering Parcel 1, pre-petition, BAC [*sic*, USB[7]] filed suit against the Debtors and all other parties with an interest in the Real Property, seeking to reform its deed of trust [on Parcel 2] to include the legal description of Parcel 1.

*Id.* at 3 n.1. Trustee elaborated by explaining that a lot book report showed First American as a first lienholder on Parcel 1, but USB had filed a lis pendens of record regarding Parcel 1 when it commenced its pre-petition deed of trust reformation action. *Id.* at 4. Trustee's lot book report showed USB as the first lien holder on Parcel 2. *Id.* Trustee contended that, given USB's assertions, sales proceeds should be held in trust pending a resolution or other determination of USB's claims as to Parcel 1.

On December 30, 2015, Trustee, First American and USB filed a stipulation consenting to the sale as proposed and to the payment of costs of sale, realtor fees, and real property taxes from the proceeds, with all remaining proceeds to be held in trust. Doc. No. 95.

Earlier in December, Debtors' counsel withdrew from representing Debtors and was replaced by new counsel in early January 2016. Debtors then filed an objection to the sale. Doc. No. 101. However, this objection did not oppose the actual sale, just the proposed distribution (or lack of distribution) of the proceeds. In particular, Debtors argued that their homestead exemption, to which there had

---

[7] *See* Compromise Motion, Doc. No. 104 at 3, ¶ 11.

MEMORANDUM OF DECISION - 4

been no objection, should be satisfied. At hearing, and after recognition that the proceeds of sale would be held subject to resolution of Debtors' claimed homestead exemption, the sale was approved and Debtors' counsel endorsed the order authorizing sale, Doc. No. 109. Promptly after that hearing Trustee filed the two motions now before the Court.

Trustee's motions assert additional factual matters. *See* Doc. No. 104 at 1–4; Doc. No. 106 at 1–2. So does Debtors' objection. Doc. No. 113 at 1–4. While they are incapable of treatment as established fact under either Fed. R. Evid. 201 or 801(d), they do form the basis for the parties' arguments. Also, in many material aspects, they are in accord. The Court thus outlines them here.

Debtors obtained a $230,000 construction loan from National City Mortgage in March 2004 to build their residence. The loan was secured with a deed of trust recorded on March 8, 2004, as Instrument No. 316633, in the records of Payette County. The residence was completed in 2005 and a certificate of occupancy was issued using an address of 6507 Gulch Road, New Plymouth, Idaho.[8]

Debtors refinanced the National City Mortgage construction loan through a $399,000.00 loan from USB. Karen Dolven completed the loan application. The USB note and deed of trust were executed on December 21, 2005, and the deed of

---

[8] Debtors assert that while this loan called for the residence to be constructed on Parcel 2, it was instead built without their knowledge on Parcel 1. Doc. No. 113 at 2.

MEMORANDUM OF DECISION - 5

trust was recorded as Instrument No. 331836 on December 27, 2005. While the loan application, and the USB deed of trust, use the 6507 Gulch Road address, the legal description appended to the USB deed of trust describes Parcel 2 only.

Trustee asserts USB did not discover the residence was actually on Parcel 1 until after the deed of trust was recorded. Debtors agree. But Debtors also assert they were not aware and did not know whether the legal description on the USB deed of trust described Parcel 1 or Parcel 2, or whether the house had been built on Parcel 1. They assert the relevant documents were prepared by the lender and the title company, and they simply signed where they were directed to sign.

Debtors became delinquent starting in 2011. USB filed a state court action in 2013 to reform its deed of trust on theories of unilateral mistake and/or mutual mistake. It also, as noted, filed a lis pendens. The reformation would expand USB's claim on Parcel 2 to include a one acre portion of the land in Parcel 1 that contains the house and septic system. The bankruptcy petition was filed just prior to a scheduled hearing on a motion for summary judgment in the state court.

## DISCUSSION AND DISPOSITION

### A.   The relief sought by Trustee

#### 1.   The Compromise Motion

USB has a lien on Parcel 2. It also has a lis pendens of record reflecting the prepetition lawsuit seeking to acquire, by judicial order, a lien on the portion of

MEMORANDUM OF DECISION - 6

Parcel 1 containing the house and surrounding one acre.

Trustee proposes a compromise that would allocate $120,000 of the gross sales proceeds to Parcel 2 and $403,000 of the proceeds to Parcel 1. USB would agree that Trustee could "avoid its unperfected lien" on Parcel 1. A proposed "Stipulation to Avoid Lien" is attached to the Compromise Motion as Ex. A. *See* Doc. No. 104-1. It asserts that the "unperfected lien" of USB is subject to avoidance under § 544.

Since USB would, under this compromise, be paid $120,000 of its $458,362.16 proof of claim from the sales proceeds "allocated" to Parcel 2, Trustee posits that the "lien avoided" on Parcel 1 is in the amount of $338,362.16. *See* Doc. No. 104-1 at 3, n.1. USB would receive an unsecured claim in the same amount. Trustee proposes to preserve that "avoided" lien under § 551 for the benefit of the estate.

### 2. The Determination Motion

The Compromise Motion does not exist in a vacuum. Under the Determination Motion, Trustee seeks authority to pay First American from the sales proceeds, as it holds a first lien position in Parcel 1, noting that this would stop the accrual of such creditor's § 506(b) interest and fees.

Trustee also argues Debtors cannot claim a homestead exemption in the balance of the sales proceeds. He reasons that once he "avoids" USB's "lien" in Parcel 1, his preservation of that lien under § 551 bars Debtors from asserting an

MEMORANDUM OF DECISION - 7

exemption in the "proceeds of the avoided lien" based on § 522(g). Trustee admits the approval of the Compromise Motion is a "threshold issue" to resolution of the Determination Motion. Doc. No. 106 at 2.

### B.   The alleged avoidance and preservation of a USB lien

All the parties concede USB has a lien on Parcel 2 based on the deed of trust's legal description. Trustee's motions necessarily flow from the assumption that USB also has a lien—albeit an allegedly "unperfected" lien—on Parcel 1. The Court finds Trustee has not established that proposition. On the record presented, it appears USB did not have, at the time of the filing of the petition, a lien on Parcel 1.

In bankruptcy cases, the nature and extent of security interests are determined by state law. *In re Seibold*, 351 B.R. 741, 744–45 (Bankr. D. Idaho 2006) (citing *Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F.2d 500, 502 (9th Cir. 1991)). *Seibold* dealt with a motor vehicle. The trustee alleged Olsen, the debtor's father, had an "unperfected" security interest that could be avoided, and obtained a stipulation from Olsen under which the certificate of title was surrendered and Olsen agreed to file an unsecured claim.[9] Trustee then contended that § 551 applied to preserve the avoided lien for the benefit of creditors.

---

[9] The parties further agreed that the certificate of title also lacked the proper notation indicating Olsen had a security interest in the vehicle. *Id.* at 744.

MEMORANDUM OF DECISION - 8

The Court disagreed, concluding that no security interest ever attached under Article 9 of the Uniform Commercial Code because there was never a written security agreement authenticated by the debtor. *Id.* at 745–46. The Court held that, without an underlying lien to avoid, § 551 did not apply. Referring to its prior decision in *In re Mingo*, 97.2 I.B.C.R. 46, 48 (Bankr. D. Idaho 1997), the Court explained that § 551 allows a trustee to step into the shoes of a creditor whose lien has been avoided, but "a trustee can acquire no greater rights than those of the creditor whose rights the trustee avoids." *Id.* at 746. *Seibold* continues:

> Two important bankruptcy principles are implicated under these facts rendering § 551 inapplicable. First, because Mr. Olsen was never granted an enforceable security interest by Debtor, Trustee had no "transfer" to avoid using the strong-arm powers granted by § 544(a). . . . Because there was no security interest in the vehicle to avoid, Trustee succeeded to no rights as a result of his stipulation with Mr. Olsen; he cannot use § 551 to enhance his position or preserve an otherwise nonexistent lien.

*Id*.

USB's "lien" in Parcel 1 that Trustee contends is "unperfected" and thus avoidable under § 544 has to be based on the deed of trust. An agreement providing for an interest in real property is invalid absent a writing subscribed by the party to be charged. Idaho Code § 9-505(4); *see also* Idaho Code § 9-503. In *In re McMurdie*, 448 B.R. 826, 829 (Bankr. D. Idaho 2010), the Court addressed a situation where a deed of trust included a street address but did not contain a legal

MEMORANDUM OF DECISION - 9

description (because a referenced "attached exhibit A" containing a legal description was never actually attached).  Following *Ray v. Frasure*, 200 P.3d 1174 (Idaho 2009), the Court concluded the street description alone did not satisfy the statute of frauds, Idaho Code § 9-505(4), nor the statutory provisions requiring a conveyance with requisite formality, Idaho Code §§ 9-503 and 45-902.  *Id.* at 829–31.  Under *Ray*, the use of a physical address alone, "although providing the general location of the property, does not give the required exact 'quality, identity or boundaries of the real property.'"  *Id.* at 830 (quoting *Ray*, 200 P.3d at 1179).  The trustee prevailed in *McMurdie* through application of § 558, which gives the estate the benefit of defenses available to a debtor, such as the statute of frauds, rather than through his attempted invocation of § 544.  *Id.* at 828–31; *see also id.* at 829 n.6 (noting that § 558 is not a lien avoidance mechanism like § 544(a)(3), and that its use, if applicable, would result in the creditor being unable to seek stay relief or enforce an alleged secured claim against the property and the estate).

      USB's deed of trust provides a physical address (6507 Gulch Road), but under *Ray* and *McMurdie* that is not enough.  The deed of trust had a legal description, but this description is solely that of Parcel 2.  As USB's lawsuit acknowledges, there was no lien created by the deed of trust on Parcel 1; that is why it filed the suit and asked the state court to judicially create one through the reformation action.

MEMORANDUM OF DECISION - 10

Trustee may only recover from USB, through the proposed stipulation, whatever USB had. *Seibold*, 351 B.R. at 746. Here, that is simply a cause of action which, if successfully prosecuted, might create a lien on one acre of the adjacent Parcel 1—property not presently encumbered by any USB lien. And, as also held in *Seibold*, § 551 does not allow Trustee "to enhance his position or preserve an otherwise nonexistent lien."

That USB filed a lis pendens in the real property records of Payette County does not resolve the problem. The filing of a lis pendens gives notice of the pendency of a party's lawsuit under which a claim affecting the title or possession of certain real property is made.[10] Idaho Code § 5-505. When filed of record, a lis pendens provides to purchasers or incumbrancers of the property "constructive notice of the pendency of the action, and only of its pendency[.]" *Id.* As stated in *Jerry J. Joseph C.L.U. Ins. Assocs., Inc. v. Vaught*, 789 P.2d 1146 (Idaho Ct. App. 1990):

> The lis pendens does not purport, by itself, to establish or to change anyone's legal rights. Of course, the filing of a lis pendens may highlight a possible legal problem affecting the property, thereby inducing an extra measure of caution by potential purchasers or lenders until the litigation is concluded. But this does not mean that any underlying legal rights have been altered. By parity of reasoning, the removal of a lis pendens, as a result of settlement or judgment, has no effect on legal rights. It simply is a signal that a dispute over those rights has been resolved.

---

[10] The term lis pendens is Latin for "pending lawsuit." Black's Law Dictionary at 1073 (10th ed.).

MEMORANDUM OF DECISION - 11

*Id.* at 1148–49. Thus neither the existence of the lis pendens, nor its removal through the proposed compromise between USB and Trustee, create rights in Parcel 1.

The Compromise Motion does several things: it allocates the sales proceeds as between Parcel 1 and 2; it would "avoid" by agreement USB's "lien" on Parcel 1; and it proposes to "preserve" that lien on the remaining $316,000 of proceeds under § 551. The Court concludes the lien avoidance and preservation components of the Compromise Motion have not been persuasively advanced, and therefore the Compromise Motion must be denied.[11] And the Court concludes that such denial must go to all facets of the Compromise Motion.[12]

### C.   The impact on the Determination Motion

The Determination Motion seeks a ruling that, due to § 522(g), Debtors cannot assert a homestead exemption against the portion of the sale proceeds

---

[11] Though the Court has focused on these threshold or foundational issues, it also reviewed the Compromise Motion under controlling precedent and concludes Trustee has not carried his burden. *See, e.g., In re Apply 2 Save, Inc.*, 2011 WL 1363771, *3–4 (Bankr. D. Idaho Apr. 11, 2011) (citing *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381–83 (9th Cir. 1986)).

[12] The Compromise Motion presents inter-related components as a whole, and the Court cannot parse it and grant some but not all. *See In re Olson*, 2006 WL 2433448, *2 n.9 (Bankr. D. Idaho July 24, 2006). Thus, while the suggested allocation of sales proceeds as between the two parcels was not really debated, it also cannot be approved. Not only did the allocation impact USB's expected recovery, the attempted preservation of the balance of the proceeds attributable to Parcel 1 as an "avoided lien" was integral to Trustee's design to eliminate Debtors' exemption and free the amounts for distribution to creditors.

MEMORANDUM OF DECISION - 12

allocated to Parcel 1. Trustee acknowledges that approval of the Compromise Motion is a threshold issue. Doc. No. 106 at 2. The denial of the Compromise Motion thus requires the denial of the Determination Motion.

In the process of evaluating this case, however, the Court sees a linkage between the identified flaw in the Compromise Motion (the absence of a lien to avoid) and the assertion of § 522(g).

Recall, creditors' rights are measured as of the petition date through application of applicable state law. *Seibold*, 351 B.R. at 744; *see also Gaughan v. The Edward Dittlof Revocable Tr. (In re Costas)*, 555 F.3d 790, 793 (9th Cir. 2009) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). On the date of the petition, USB did not have a lien in Parcel 1, only a lawsuit denoted with a lis pendens. Thus, USB had no present interest in Parcel 1, only an expectation that litigation would create one. *See Jerry J. Joseph C.L.U. Ins. Assocs.*, 789 P.2d at 1148–49.

In *Ehrenberg v. Hidalgo (In re Hidalgo)*, 2007 WL 7540950 (9th Cir. BAP July 9, 2007), one of the issues the Panel considered was whether a debtor's homestead exemption was barred by § 522(g). The Panel held the trustee's invocation of § 522(g) was premature because no transfer had been adjudged to be avoidable (there arguably under § 548(a)(1)), and no property had been returned to the estate. *Id.* at *6. The Panel noted that the purpose of § 522(g) was to prevent a

MEMORANDUM OF DECISION - 13

debtor from claiming an exemption in "recovered property which was transferred in a manner giving rise to the trustee's avoiding powers[.]" *Id.* (citing *Hitt v. Glass (In re Glass)*, 164 B.R. 759, 764 (9th Cir. BAP 1994)). It further noted that in order to invoke § 522(g), the property at issue must have been "recovered" for the benefit of the bankruptcy estate. *Id.* (citing *Glass*, 164 B.R. at 764–65).

Here, Debtors were the title owners of both Parcel 1 as well as Parcel 2 at the time of the bankruptcy filing. USB had a lien on Parcel 2 only. Trustee has, as in *Hidalgo,* not recovered anything to which § 522(g) is relevant.

And there is yet another issue. Debtors owned and resided on Parcel 1 on the petition date and claimed a homestead exemption in it on their initial schedule C. Doc. No. 1 at 18. That claim of exemption was never challenged by Trustee or any creditor through an objection filed within the time limits of Rule 4003(b)(1). *See In re Van Schoiack*, 2012 WL 174470, *1 n.3 (Bankr. D. Idaho Jan. 20, 2012) (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992)); *see also Rainsdon v. Farson (In re Farson)*, 387 B.R. 784, 797–98 (Bankr. D. Idaho 2008) (applying *Taylor* and rejecting a trustee's reliance on § 522(g)). This, too, would seem to enter into the analysis.

## CONCLUSION

For the reasons set out above, the Court finds and concludes the Compromise Motion must be denied. As Trustee concedes the Compromise

MEMORANDUM OF DECISION - 14

Motion is a condition precedent to his assertion of the Distribution Motion, it too must be denied.

The Court will enter an order accordingly.

DATED: April 13, 2016

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE